IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DAVID W KELSO,
    Petitioner,

v.                           Case No.  5:10cv181/RS/CJK

KENNETH S. TUCKER,[1]
    Respondent.

_____

ORDER and
<u>REPORT AND RECOMMENDATION</u>

    Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 16).  Petitioner has not replied although given the opportunity to do so.  (*See* Doc. 18).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

    On March 13, 2000, petitioner was convicted upon jury verdict of capital

_____

[1]Kenneth S. Tucker succeeded Walter McNeil and Edwin Buss as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

sexual battery (Count I) and lewd or lascivious conduct (Count II) for acts he committed on a ten-year-old girl in April of 1999.  (Doc. 16, Ex. C, pp. 63-69).[2] Petitioner was sentenced on Count I to life imprisonment without parole and on Count II, as an habitual felony offender, to a consecutive thirty-year term of imprisonment.  (*Id.*).  Petitioner appealed, raising one issue:  "The State Failed To Prove Mr. Kelso Committed Capital Sexual Battery In Violation Of The Fourteenth Amendment To The United States Constitution And Article I, Section 9 Of The Florida Constitution."  (Ex. D).  The Florida First District Court of Appeal ("First DCA") per curiam affirmed without written opinion on July 30, 2001.  *Kelso v. State*, 792 So.2d 453 (Fla. 1st DCA 2001) (Table) (copy at Ex. G).

On February 18, 2002, petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. M, pp. 242-43).  The state court summarily denied the motion on March 7, 2002.  (*Id.*, pp. 244).  Petitioner did not appeal.

On April 12, 2002, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising one claim of newly discovered evidence and two claims of ineffective assistance of trial counsel.  (Ex. J, pp. 1-13).  The trial court summarily denied the motion on May 9, 2002.  (*Id.*, pp. 14-137).  By opinion issued March 21, 2003, the First DCA affirmed in part, reversed in part and remanded for an evidentiary hearing to determine whether the newly discovered evidence was of such nature that it would probably produce an acquittal on retrial. *Kelso v. State*, 840 So.2d 1111 (Fla. 1st DCA 2003) (copy at Ex. K).  The mandate issued April 8, 2003.  (Ex. I).   On remand, the postconviction court held an

---

[2]Hereafter, all references to exhibits are to those provided at Doc. 16, unless otherwise noted.

evidentiary hearing on petitioner's newly discovered evidence claim and denied relief. (Ex. M, pp. 436-38). The First DCA per curiam affirmed without written opinion. *Kelso v. State*, 25 So.3d 1227 (Fla. 1st DCA 2010) (copy at Ex. Q). The mandate issued January 29, 2010. (Ex. R). Petitioner's motion for rehearing was denied on February 24, 2010. (Ex. T).

On March 30, 2010, Petitioner filed another motion to correct illegal sentence under Fla. R. Crim. P. 3.800(a). (Ex. U). The trial court summarily denied the motion as successive on April 12, 2010. (Ex. V). Petitioner did not appeal.

Petitioner filed his federal habeas petition in this Court on July 1, 2010. (Doc. 1). The petition presents five grounds for relief: (1) that petitioner's Habitual Felony Offender sentence is illegal, (2) that the State failed to prove an essential element of the capital sexual battery offense (that petitioner was 18 years old or older at the time of the offense), (3) that trial counsel was ineffective for failing to subpoena Bruce Carter to testify at trial, (4) that trial counsel was ineffective for failing to object and move for a mistrial when the prosecutor made improper statements during closing argument and (5) that newly discovered evidence discredits the State's evidence used to convict petitioner. (Doc. 1). Respondent asserts that petitioner is not entitled to relief on any of his claims, because they either do not raise a federal constitutional issue, are procedurally defaulted, or are with merit. (Doc. 16).

LEGAL STANDARDS

Claims Cognizable on Federal Habeas Review

Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) (errors that do not infringe upon a defendant's constitutional

rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-59, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted). Questions of state law and procedure "rarely raise issues of federal constitutional significance.  [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger*, 941 F.2d 1551 (11th Cir.1991) (*quoting Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983)).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue.  *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary

to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*,  633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the

claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").   Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently

declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

<u>Exhaustion and Procedural Default</u>

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[4] thereby giving the state the "'opportunity to pass upon and correct'

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).  A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (holding that the independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted

---

rights of the applicant.

. . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower*, 7 F.3d at 210.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence

– that was not presented at trial.

*Id*.

## DISCUSSION

<u>Ground One</u>          <u>Petitioner's Habitual Felony Offender Sentence Is Illegal.</u>

Petitioner challenges his sentence on the lewd or lascivious assault conviction, arguing that:  "[t]o enhance the lewd and lascivious assault sentence through habitual offender sentencing and enhance it by making it consecutive violates the reason for the rule." (Doc. 1, p. 4).  Respondent asserts that the Court is without jurisdiction to address this claim, because it presents purely a state law issue – the propriety, under Florida sentencing law, of consecutive sentencing when one sentence is the result of an habitual offender designation – and does not even purport to raise an issue of constitutional dimension.  (Doc. 16, pp. 5-6).  Respondent is correct.

In *Wilson v. Corcoran*, — U.S. —, 131 S. Ct. 13, 16, 178 L. Ed. 2d 276 (2010), the Supreme Court explained in a manner dispositive of this claim:

> [I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  And we have repeatedly held that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  502 U.S., at 67-68, 112 S. Ct. 475.

Petitioner alleges that his sentence violates Florida law, but does not suggest that this alleged state law error also entails the infringement of any federal right.

Petitioner's Ground One does not raise a colorable claim for federal habeas relief, and should be denied.

<u>Ground Two</u>      <u>The State's Failure To Prove An Essential Element Of Capital Sexual Battery Constitutes Fundamental Error.</u>

Petitioner claims that his sexual battery conviction violates due process because the State failed to prove he was over the age of 18 at the time he sexually battered the victim. (Doc. 1, p. 4). Petitioner raised this claim on direct appeal. (*Id.*, p. 5). Petitioner's Initial Brief on appeal acknowledged that trial counsel failed to preserve the issue for appellate review because counsel made a boilerplate motion for judgment of acquittal without arguing any specific grounds. Petitioner's brief further acknowledged that the First DCA does not consider unpreserved claims of insufficient evidence to constitute fundamental error reviewable on direct appeal. Nonetheless, appellate counsel argued that the First DCA should review petitioner's claim because "the error of convicting a person of a crime based on insufficient evidence constitutes fundamental error." (Doc. 16, Ex. D, p. 10). The State argued in its Answer Brief that the issue was procedurally barred because it was not preserved and was not reviewable as fundamental error. (Ex. E). The State alternatively argued that the issue was without merit. (*Id.*). The First DCA summarily affirmed petitioner's conviction without explanation.

Respondent asserts a procedural default defense, arguing: "Petitioner never presented this claim to the State trial court, nor did Petitioner ever alert the state trial court that he was raising a federal constitutional claim, making any such claim unpreserved for State appellate review on direct appeal. Accordingly, his claim is unexhausted and, now because he cannot file another direct appeal, procedurally defaulted." (Doc. 16, p. 12). *See also* Doc. 16, p. 6 ("[T]his claim is procedurally

defaulted because it was not properly preserved through a motion for judgment of acquittal in the trial court and unexhausted because Petitioner did not establish that he was raising a federal constitutional claim when he presented his motion for judgment of acquittal to the trial court.").

Florida Rule of Criminal Procedure 3.380(b) requires that a motion for judgment of acquittal "fully set forth the grounds on which it is based."  At trial, defense counsel submitted a boilerplate motion for acquittal, stating:  "The State has failed to prove a prima facie case."  (Doc. 16, Ex. M, p. 166).  Defense counsel did not set forth the specific grounds upon which the motion was based, and did not bring to the trial court's attention the specific ground raised in petitioner's appellate brief and here – that there was insufficient evidence of his age.  Accordingly, the issue was not preserved for appeal and was procedurally barred.  *See Brooks v. State*, 762 So.2d 879 (Fla. 2000) (holding that limited boilerplate motions for judgment of acquittal which were of a technical and pro-forma nature were inadequate to preserve a sufficiency of the evidence claim for appellate review); *Woods v. State*, 733 So.2d 980 (Fla. 1999) (same).  Appellate counsel's assertion that the error was fundamental did not open the gate to appellate review, because unpreserved claims of insufficient evidence do not constitute fundamental error.  *State v. Barber*, 301 So.2d 7 (Fla. 1974) (holding that where no appropriate motion was made in the trial court to test the sufficiency of the evidence, the issue of the sufficiency of the evidence was not open to appellate review on direct appeal from an adverse judgment); *Woods v. State*, *supra* (same); *James v. State*, 745 So.2d 1143 (Fla. 1st DCA 1999) (same).

Although the First DCA did not explain its decision, this Court should presume that the First DCA rejected the claim based on the procedural bar.  The Supreme

Court and the Eleventh Circuit have instructed that where there is an unexplained state decision, or no state ruling at all, on a federal claim that was clearly procedurally barred in the state court, a federal habeas court should presume that the state court relied upon the procedural bar in rejecting the claim. *Coleman v. Thompson*, 501 U.S. at 740 (holding that state supreme court's three-sentence dismissal order granting State's motion to dismiss (which was based solely on a state procedural ground) but not expressly stating that the dismissal was based on the state procedural ground, rested on independent and adequate state procedural ground precluding federal habeas review; petitioner's state court appeal was clearly untimely, State's motion to dismiss was based solely on petitioner's filing his appeal late, and state court's decision did not "fairly appear" to rest primarily on federal law or to be interwoven with such law); *Kight v. Singletary*, 50 F.3d 1539 (11th Cir. 1995) (holding that petitioner's claim was procedurally defaulted, where petitioner filed state habeas petition in Florida Supreme Court raising a claim that was clearly procedurally barred and Florida Supreme Court summarily denied the petition: "[A]lthough the state court summarily denied Kight's petition, there is nothing in its disposition of the case which discusses the federal grounds at issue.  We thus cannot assume that had the Florida Supreme Court explained its reasoning, it would have reached the merits of Kight's claim.") (internal quotation marks and citation omitted); *Tower v. Phillips*, 7 F. 3d 206, 211 (11th Cir. 1993) (holding that petitioner's claims were procedurally defaulted, where petitioner filed two postconviction motions in Florida state court seeking to vacate his sentence on grounds which were procedurally barred and the state court never ruled on the claims: "[W]e may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the

merits of this case.  In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."); *see also, e.g., Creed v. Dep't of Corr.*, 330 F. App'x 771, 772 (11th Cir. 2009) ("We have held that, where the existence of a procedural bar is clear and no state court has given any rationale for its summary disposition of the defendant's claim, we will not presume that'"had the [state court] explained its reasoning, it would have reached the merits of [the defendant's] claim.'") (*quoting Kight*, 50 F.3d at 1545); *Sharpe v. McDonough*, No. 4:05cv164/RH/WCS, 2006 WL 2038562, at *3 (N.D. Fla. 2006) (holding that petitioner procedurally defaulted federal claim; petitioner presented claim on direct appeal, State argued that the claim could not be heard on the merits because it was not preserved for appellate review, and First DCA affirmed without an opinion:  "Under these circumstances, it must be presumed that the First District Court of Appeal relied upon the procedural bar."); *Oberwise v. Sec'y, Dep't of Corr.*, No. 8:11cv1124, 2012 WL 527173, at *8 (M.D. Fla. 2012) (finding federal claim procedurally defaulted where there was no objection at trial, State argued on direct appeal that claim was procedurally barred, and state appellate court per curiam affirmed without written opinion; "The state appellate court's *per curiam* affirmance on direct appeal operates as an acceptance of the procedural bar.  Where a claim is rejected without opinion, and the existence of procedural bar is clear, federal courts on habeas review will not assume that the state appellate court would have reached the merits of the claim rather than rejecting it as being procedurally barred.").

Petitioner does not show cause and prejudice to overcome his procedural default, and does not meet the miscarriage of justice exception.  With regard to the latter, petitioner has not come forward with new reliable evidence of his actual

innocence.  The Court has reviewed the "newly discovered evidence" offered in Ground Five, and concludes that the evidence does not make it "more likely than not" that no reasonable juror would have found beyond a reasonable doubt that petitioner sexually battered the victim.

Petitioner was convicted of sexually battering the 10-year old victim by putting his hand in her vaginal area, putting his mouth on her vagina, and uniting his penis with her vagina and anus.  The victim's father, Mr. Baxter, testified that he had been friends with petitioner for approximately five years prior to trial.  Mr. Baxter and petitioner were "both down on our luck at the time" and they and their wives "pooled our resources way back then and worked our way basically out of the gutter together and sort of cohabitated."  (Ex. M, pp. 119-20).  In April of 1999, Mr. Baxter moved his family (consisting of then-girlfriend Jeannie Bissett ("Sissy"), and six children) from one apartment to another within the same complex, but in a different building. (*Id.*, pp. 120-21).  Mr. Baxter testified that he believed petitioner was "about my age, 31."  (*Id.*, p. 121).  On the day of the move, Mr. Baxter's 10-year old daughter, the victim in this case, was sent to the new apartment to straighten things out, put away clothing and the like.  (*Id.*, p. 119).  Petitioner was at the new apartment to assist the victim.  At some point petitioner and the victim were alone together in the new apartment.  (*Id.*, p. 121).  Mr. Baxter testified that the victim had never lied about being touched or anything of such nature before.  (*Id.*, pp. 126-27).

The victim's 9-year old brother testified that on the day of the move, he went to the new apartment and petitioner would not let him in.  Petitioner "got in the door and shut the door and locked it."  (*Id.*, p. 129).  The brother thought that was weird, so he left and told his stepmother "Sissy" (Jeannie Bissett) that petitioner would not

let him into the apartment.  (*Id*., p. 130).  At Bissett's direction, the victim's brother returned to the new apartment to try other doors and windows, but found they were all locked.  The victim's brother testified that he could not see inside, because all the windows and curtains were shut and pulled down.  (*Id*., pp. 130-31).

The victim testified that on the day of the move, she and petitioner were alone in the new apartment.  (*Id*., p.1456).  The victim had no worries about being alone with petitioner, because petitioner was her father's best friend and a friend of the family.  (*Id*., p. 146).  The victim was putting clothes away when petitioner approached her and started taking her clothes off, despite her repeatedly telling him to stop.  (*Id*., pp. 146-47).  Petitioner told the victim "not to tell anyone or she would be hurt."  (*Id*.).  Petitioner took the victim's shirt and shorts off, laid the victim on the bed, then took his black shorts and black underwear off.  (*Id*., pp. 147, 149-50).  The victim testified:  "He would try to put his dog [penis] into my private [vagina] but it wouldn't go in so he put it in my butt."  (*Id*. p. 149).  Petitioner also put his hands and mouth on the victim's "private."  (*Id*., pp. 150-51).  As this was going on, the victim's brother knocked at the door.  (*Id*., p. 151).  The victim ran to the bathroom to put her clothes on and yelled to her brother that she would be out in a minute.  (*Id*., p. 152).  The victim and petitioner then returned to the old apartment.  (*Id*., p. 153). The victim testified that her stepmother Sissy (Ms. Bissett) noticed that the victim's shirt was on backwards and inside out.  The victim did not immediately tell anyone about the incident because she "was scared he would actually hunt me down and hurt me."  (*Id*., pp. 52-54).  The first person the victim told about the incident was Bruce, another family friend, who was 19.  The victim said she was flirting with Bruce one day – "scooted next to him on the couch" – and told him that "David would start taking off

my clothes and that he has done bad things to me and that's what I told Bruce."  The victim then told her stepmother Sissy.  (*Id.*, pp. 153-54).

The victim testified about a prior incident where she lied to her parents.  The victim would babysit for another couple named "David [Lockheart] and Carrie," and sometimes sleep over.  David Lockheart played in a band with the victim's father.  The victim thought David Lockheart and Carrie caught her spying on them as they were having sex, so the victim lied to her parents to avoid getting into trouble, saying that they asked her to watch them.  The victim later told her parents that she lied.  (*Id.*, pp. 123-125, 137-40, 158-59).

Petitioner took the stand and testified that he had known the Baxter family for five years, and that he and his wife lived with Mr. Baxter and Baxter's wife at one point.  (*Id.*, p. 167).  Petitioner acknowledged that he was alone in the new apartment with the victim for about 15 minutes in order to help with the move.  Petitioner denied doing anything improper with the victim.  (*Id.*, pp. 168-69).  Petitioner testified to his two prior felonies.  (*Id.*, p. 171).

The jury had to decide whether it believed the victim, who admitted that she previously lied about adults inviting her to watch them have sexual intercourse, or petitioner, who admitted being alone with the victim for 15 minutes on the day in question but otherwise denied all of the allegations.  The State argued that the jury should believe the victim, because there was no way she could have known about the things she described unless petitioner actually did them to her.  The State further argued that petitioner was less credible than the victim, because he had a reason to lie while the victim had no incentive to lie.  The jury believed the victim.

The Court has reviewed petitioner's "newly discovered evidence" to determine

whether it meets *Schlup*'s threshold to invoke the miscarriage of justice exception, and finds that it does not.  Petitioner's newly discovered evidence is that just a few weeks after he was sentenced, another man (Robert Carlos Carter) was arrested and charged with committing "similar" (according to petitioner) acts on the same victim. This man allegedly confessed and admitted that he had had an ongoing "relationship" (according to petitioner) with the victim, which included paying her money each week for her silence.  According to petitioner, this evidence severely discredits the State's arguments that:  (1) the victim was an innocent child who used innocent language and was an otherwise normal girl except for the fact that she had been subject to petitioner's attack; (2) the only way the victim could have known about the things she described is if petitioner did them to her; and (3) the victim had no incentive not to tell the truth.  Petitioner contends that had he known of this ongoing "relationship" between the victim and Robert Carter, he could have presented evidence demonstrating that:  (1) the victim's portrayal at trial that she was an innocent girl lacked credibility, (2) perhaps the events did happen but the victim changed the name of the perpetrator, and (3) the victim was lying about the identity of the perpetrator in order to protect Robert Carter or her source of income. Petitioner's newly discovered evidence also includes an allegation that after trial, petitioner learned that another man, David Lockheart, made a sexual advance on the victim prior to petitioner's attack.

Petitioner presented this "newly discovered evidence" to the state court in his Rule 3.850 motion.  The state postconviction court held an evidentiary hearing on April 18, 2008, to allow petitioner to factually develop his claim.  (Doc. 16, Ex. M, pp. 474-518).  Petitioner testified and submitted the deposition testimony of the

victim, which was taken prior to the evidentiary hearing.  The state court concluded that the newly discovered evidence about Robert Carter and David Lockheart was not relevant or material to any issue in the case, was not inconsistent with any of the issues raised by the State in support of the jury verdict, and did not go to the merits of the case against petitioner.  (Ex. M, pp. 461-63).

The undersigned reaches the same conclusion upon independent review of petitioner's newly discovered evidence (petitioner's allegations provided in Ground Five as well as the evidence developed at the Rule 3.850 evidentiary hearing).  The unrefuted evidence at the postconviction evidentiary hearing establishes that the acts of abuse committed on the victim by Robert Carter were committed <u>after</u> the incident involving petitioner.  (Doc. 16, Ex. N, Dep. of A.B. at 27, 28, 29, 34).  The victim testified to that fact, and her testimony was corroborated by the charging documents in petitioner's criminal case and Mr. Carter's criminal case.  Petitioner's attack on the victim occurred between April 2, 1999 and April 30, 1999.  (Ex. C, pp. 19, 35-36; Ex. J, p. 63).  Petitioner's trial was held on February 8, 2000.  (Ex. M, p. 102).  Robert Carter's sexual abuse occurred during the months of March or April of 2000.  (Ex. N, Evidentiary Hearing Defense Exhibit 3, Amended Information filed in *State of Florida v. Robert Carlos Carter*, Bay County Circuit Court Case No. 00-1226G).

In addition, the victim's unrefuted postconviction deposition testimony established that she did not have a "relationship" with Robert Carter.  (Ex. N, Dep. of A.B. at 15-16).  Further, the sexual acts by Robert Carter bore no relation to the sexual acts committed by petitioner.  Robert Carter's sexual abuse occurred when the victim was with her friend Natasha, in an abandoned house, and involved Carter touching and "messing around" with the victim and Natasha.  (*Id*., pp. 18-20).  Mr.

Carter's sexual abuse involved placing his mouth and tongue in the victim's vaginal area, trying to penetrate the victim's vagina with his fingers and touching the victim's breasts. (*Id*., pp. 15, 17-20). The nature of Mr. Carter's sexual abuse was unlike petitioner's in that Mr. Carter made no attempt to use his penis in intercourse with the victim. (*Id*.). There are no inconsistencies in the victim's description of the acts of abuse committed by Robert Carter and those committed by petitioner. Nothing ties the sexual abuse by Mr. Carter with the sexual battery committed by petitioner, nor does the evidence about Carter's sexual abuse establish an issue that the victim was having a relationship with another man at the time petitioner attacked her.

The victim's unrefuted postconviction testimony concerning David Lockheart was that Lockheart once tried to "mess with" the victim, but that Lockheart did not make sexual contact. (Ex. N, Dep. of A. B. at 38). Specifically, on one occasion prior to the incident involving petitioner, Mr. Lockheart put his arm around the victim, placed his hand on her leg and started to move his hand up her leg. (*Id*., pp. 38-40). The victim immediately ran out of the room and told her father. The victim's father immediately kicked Mr. Lockheart out of the house. (*Id*., p. 41). This incident was the only time Mr. Lockheart made a sexual advance on the victim. (*Id.*, pp. 37, 39, 51). Nothing ties this sexual advance by Mr. Lockheart with the sexual battery committed by petitioner, nor does the evidence about Lockheart's sexual advance establish an issue that the victim was having a relationship with another man at the time petitioner attacked her.

The Court is further mindful of the fact that other evidence presented at trial corroborated the victim's testimony: (1) the victim's family noticed that her shirt was on inside out and backwards following petitioner's attack, and (2) the victim's

brother's testified that petitioner denied him entry into the new apartment on the day of the incident.

Petitioner's evidence is not relevant to any issue in petitioner's case, is not inconsistent with any of the issues raised by the State in support of the jury verdict, and falls far short of showing that had the jury heard about Mr. Lockheart's prior sexual advance and Mr. Carter's subsequent sexual abuse, it is more likely than not that no reasonable juror would have convicted petitioner.  Petitioner has not excused his procedural default, and is not entitled to federal habeas review of his due process claim raised in Ground Two.

<u>Ground Three</u>        <u>Ineffective Assistance Of Trial Counsel For Failing To Subpoena Bruce Carter To Testify</u>

Petitioner claims trial counsel was ineffective for failing to call Bruce Carter to testify to the statements the victim made to him about petitioner's sexual battery. (Doc. 1, p. 5).  Petitioner raised this claim in his Rule 3.850 motion.  The state postconviction court denied relief (ex. J, p. 14), and the First DCA affirmed, explaining:

> As for the ineffective assistance of counsel claims, we find them both to be without merit.  In the first claim, Appellant alleges that defense counsel should have called the 19-year-old man to whom the victim first reported her allegations against Appellant, because his account of what the victim said differed from the victim's trial testimony.  Not only did she use explicit terminology in her description, but she also described familiarity with more acts than just those she accused Appellant of committing at trial.

> We find that Appellant has not demonstrated that he was prejudiced by his counsel's failure to call this witness to testify.  It is only in light of the newly discovered evidence that it appears that counsel's performance was deficient or that Appellant was prejudiced

by the decision.  At the time of the trial, defense counsel had no basis for arguing that someone other than Appellant committed the acts, so there was no reason to present even more evidence of the bad acts that Appellant allegedly committed.  It is clear from the record that counsel investigated this other witness and specifically used the State's failure to call him in its case-in-chief against it.  Thus, even if Appellant were prejudiced by the failure to call this witness to testify, this is one of the few cases in which counsel's trial strategy is apparent from the face of the record.  Accordingly, we affirm the trial court's denial of this claim.

*Kelso v. State*, 840 So.2d at 1113 (copy at Ex. K).

The state court's rejection of petitioner's claim is consistent with *Strickland*. The record supports the state court's finding that counsel knew the substance of Bruce Carter's proposed testimony and made a strategic decision not to call him.  A copy of Bruce Carter's statement to police was provided to the defense during discovery.  (Ex. J, p. 19).  Bruce Carter's statement was consistent with the victim's testimony at trial, except that Mr. Carter described the victim as telling him not only that petitioner tried to stick his penis "in the front first and it hurt too much, so he took it out and stuck it in the back," but also that petitioner taught the victim "how to suck, fuck and a couple of new moves. . . . He taught me the 69 and how to suck a man to get him off."  (*Id.*).  The only benefit to be gained from Bruce Carter's testimony was to attempt to impeach the victim's credibility and to show that she was not as innocent as the State portrayed her (i.e., she was familiar with more sexual acts than those petitioner committed).  Carter's testimony was potentially highly damaging, however, because it corroborated the victim's testimony (with some detail) that petitioner united his penis with her vagina and penetrated her anus.

As evidenced by the trial transcript, defense counsel chose to rely on other evidence of impeachment and sexual knowledge (the victim spying on the couple

having sex and then lying about it) which enabled him to get the substantive benefit
of Bruce Carter's testimony without the potential damage, and which also enabled
counsel to use the State's failure to call Bruce Carter against the State.   Counsel
argued in closing:

> Why would I suggest to you that you should not believe this child.
> Because this child has admitted to you that she makes up stories about
> sexual things that, no, I guess she would be 8 years old at the time, no
> 8 year old should know about.  Remember the story that she came up
> with.  Why did she come up with a story.  She was afraid she would get
> in trouble for spying on the people having sex.  She thought she got
> caught and at first she says I watched them have sex, thought I got
> caught.  And the part about the hot dog or the dog spurting cream out.
> 8 years olds shouldn't know about that.   Where did she get that
> knowledge at the age of 8.  She already had sexual knowledge years
> before she accused Mr. Kelso of this.

> You may have wondered how could a 10 year old child come up
> with details like this.  This is a knowledgeable child to come up with
> this.  But she made up this story and she went and told Jeanie, I think
> she told her dad, that was wrong, she told Jeanie, the stepmom who is
> really the dad's girlfriend that lives in the home with them about
> watching this couple, the couple made her watch.  That was the lie part.
> And talking about the hot dog.  Then a month later of her own accord,
> by the way, that's a lie. . . . [S]he admitted that was a lie.  And she
> corrected and said, by the way, they didn't make me watch, I didn't see
> anything.  And then she got confused in here and I submit to you she got
> caught in a lie in here, she lied in your presence.  I didn't watch them.
> Yes, I did watch them.  She kept changing her story.

> . . . .

> Why did she make this story up.  She's at home flirting with
> Bruce who is in and out of he house all the time who is 19 years old
> flirting with him.  She's telling him things like I've done it with an older

man, he showed me some moves.  Why is she telling him things like
that.  Apparently she desired Bruce.  Although she wouldn't admit to
that.  Why else would she be telling Bruce though.  Although she is not
really, why she was flirting with Bruce but she got caught, she's come
up with this story that David did this stuff to her.  Now she has to stick
with the story because she's caught.

. . . .

What did she tell Bruce, where is Bruce.  Bruce didn't testify.  How do
we know she told the same story to Bruce that she told to David.
Because she told you so.  Did  she tell the same story to her father.  She
told you so.  Did she tell the same story to the Child Protection Team,
to the doctor.  She told you so.  Those people weren't here to testify.  So
it all boils down to A. B.'s testimony, 11 year old child.

(Ex. J, pp. 99-101).

Defense counsel's strategy was reasonable.  The strategy allowed petitioner to
receive the benefit of challenging the victim's credibility and innocence without the
detrimental effect of the jury hearing Bruce Carter corroborate the victim's testimony
about the sexual battery.   Counsel's strategy also enabled counsel to suggest to the
jury that the victim told Bruce Carter a different story (and that is why the State did
not call him to testify), whereby calling Carter would have revealed that the victim's
testimony was consistent with regard to petitioner's anal penetration and attempted
vaginal penetration.  Petitioner has not shown that no reasonable attorney would have
adopted counsel's strategy, or that counsel's strategy prejudiced him.

The state court's rejection of petitioner's claim was not contrary to *Strickland*,
was not an unreasonable application of *Strickland*, and was not based on an
unreasonable determination of the facts.  Petitioner is not entitled to federal habeas
relief on Ground Three.

| | |
|---|---|
| <u>Ground Four</u> | <u>Ineffective Assistance Of Trial Counsel For Failing To Object To And Move For Mistrial On Prosecutor's Improper Statements During Closing Argument</u> |

Petitioner claims trial counsel was ineffective for failing to object to the prosecutor's "improper statements" during closing argument.   (Doc. 1, p. 5). Petitioner's claim does not identify the allegedly improper statements.  Petitioner presented this claim to the state court in his Rule 3.850 proceeding, where he identified the following three statements as improper:

1.    The prosecutor's statement that: "Reasonable doubt is not defined in the statute other than to say what it is not.  A reasonable doubt is not a forced doubt, it is not a  speculative doubt, it is not an imaginary doubt. Such a doubt should not convince you to find a person not guilty if you have an abiding conviction of guilt."  Petitioner argued to the postconviction court that this comment misstated the law and did not conform with the trial court's jury instructions defining reasonable doubt.  Petitioner argued that "[t]he prosecutor's selective and partial rendition of this instruction is also improper as it misleads the jury, invades their exclusive factfinder province and puts a preconceived misunderstanding into their minds as to this issue of law." (Ex. J, pp. 8-9).

2.    The prosecutor's comment on petitioner's trial testimony that petitioner "didn't say anything about why she [the victim] would have made this up, didn't say anything about any anger, any problems between the Defendant and the Baxters, any of them.  He's not required to tell you anything, but he got up there and he didn't give you any of that kind of

information.  Doesn't have to tell you why, but, boy, there was a good chance wasn't there?"  (*Id.*, p. 9).  Petitioner argues this comment was improper, because he testified that he had punished the victim in the past and that that could have been the reason for the victim blaming him.  (*Id.*, pp. 9-10).

3.     The prosecutor's comment:  "I submit to you that there is only one verdict in this case that is supported by the evidence and that is demanded by the law as the judge will instruct you and that is guilty as charged on both counts."   Petitioner argues that this comment "impermissibly invaded the exclusive factfinding province of the jury, made an improper demand to their civil duty by convicting and misleading the jury into believing they had to convict as a matter of law as given to them by the court."  (*Id.*, p. 10).

The  state  postconviction  court  denied  relief,  stating:   "In  ground  three Defendant alleges counsel was ineffective for failing to object or move for mistrial based on what Defendant alleges are improper comments by the prosecutor. Defendant's claims are without merit.  The prosecutor's comments were not improper and/or did not prejudice Defendant. *See Trial Transcript pgs. 87-101*."  (Ex. J, pp. 14-15).  The First DCA affirmed without discussion.  (Ex. K).

Petitioner  has  not  shown  that  counsel's  failure  to  object  was  deficient  or prejudicial.  The prosecutor's statement concerning reasonable doubt is an accurate statement of the law and is consistent with the trial judge's instructions to the jury. The trial judge properly instructed the jury, in relevant part:  "A reasonable doubt is not a mere possible doubt, a speculative, imaginary or forced doubt.  Such a doubt

must not influence you to return a verdict of not guilty if you have an abiding conviction of guilt." (Ex. J, pp. 123-24); *see also Hernandez v. Fla. Dep't of Corr.*, No. 11-13597, 2012 WL 661304, at *4 (11th Cir. Mar. 1, 2012) (unpublished opinion) (holding that reasonable doubt instruction was proper, where it explained that "mere possible doubt, a speculative, imaginary or forced doubt" must not influence the jurors to return a not-guilty verdict if they have "an abiding conviction of guilt.").

The prosecutor's argument in which he asked why petitioner's trial testimony failed to identify a motive for the victim to make up the story about petitioner abusing her, (ex. J, p. 113), did not misstate the evidence. The argument was reasonably inferred from the evidence and was a proper comment on petitioner's defense at trial that the incident never happened and was merely a story the victim made up. Petitioner's brief extract of the prosecutor's closing argument excludes that portion where the prosecutor acknowledged the very evidence petitioner says he ignored or missated – petitioner's testimony that the victim was angry at him because petitioner spanked her on one occasion:

> MR. GRAMMAR [prosecutor]: "Was she angry at David Kelso. Well, the defendant said that he had spanked her some time long before this incident that happened in April. So I guess it could be argued to you that this had been a smoldering resentment from some spanking she had long before and so finally in June she decided to make up this story and tell. Not only would she have made up this story when she talked to Sissy and then to the police and then about everybody else but she also would have had to make up when this happened. She would have had to make up, sit there and instantly when she came up with what he did she must have come up with where it happened, when it happened, was able to realize that in making up this story that I can connect it with Johnny [the victim's little brother] coming to the door and also connect

it with my shirt being on inside out.

(Ex. J, pp. 108-09).   The prosecutor did not manipulate or misstate the evidence – he presented his reasonable impressions from the evidence and argued legitimate inferences therefrom.   There was no basis to object to the prosecutor's statement.

The final comment at issue – the prosecutor's comment on the proper verdict – was also permissible.   The prosecutor merely argued that the weight of the evidence established petitioner's guilt.   *See, e.g., United States v. Martinez*, 412 F. App'x 189, 191 (11th Cir. 2012) (concluding that prosecutor's remark – "I don't think there's any question based on the evidence you've seen, I don't think there's any reasonable doubt whatsoever" – could be characterized as an attempt to argue the weight of the evidence and was not improper); *United States v. Tisdale*, 817 F.2d 1552, 1556 (11th Cir. 1987) (concluding that prosecutor's remark – "I believe the government has proven its case beyond a reasonable doubt" – went to the weight of the evidence and was not improper).

The state court's rejection of petitioner's ineffective assistance claim was not contrary to *Strickland*, was not based on an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.   Petitioner is not entitled to federal habeas relief on Ground Four.

<u>Ground Five</u>          <u>Newly Discovered Evidence Or Facts That Could Not Have Been Known At The Time Of Trial</u>

Petitioner's final claim is a substantive newly discovered evidence claim based on Robert Carter's conviction of sexually abusing the victim.   Petitioner asserts the same facts and argument outlined in the Court's miscarriage of justice analysis discussed in Ground Two above.   Petitioner alleges that just a few weeks after he was sentenced, Robert Carter was arrested and charged with committing "similar acts" on

the same victim, and Carter "confessed and admitted that he had an ongoing 'relationship' with the victim." (Doc. 1, p. 8). Petitioner asserts that this "newly discovered evidence" severely discredits the State's arguments that: (1) the victim was an innocent child except for the fact that she had been subject to petitioner's attack, (2) that the only way the victim could have known about the things she described is if petitioner actually did them and (3) that the victim had no incentive to lie. Petitioner argues that had he known "of this ongoing relationship" between Robert Carter and the victim, he could have presented evidence demonstrating that the victim's portrayal of herself as an innocent girl lacked credibility, that perhaps the events did happen but the victim changed the name of the perpetrator, and that the victim was lying about the identity of the perpetrator to protect Robert Carter and her source of income. (*Id.*).

Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. *Herrera v. Collins*, 506 U.S. 390, 400, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993); *see also, Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) ("It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial."). Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *See Herrera*, 506 U.S. at 400. A claim of innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. *Schlup v. Delo*, 513 U.S. 298, 315, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

Petitioner has not demonstrated that an independent constitutional violation occurred at his criminal trial.  Petitioner's freestanding claim of actual innocence/newly discovered evidence provides no plausible basis for federal habeas relief.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Kenneth S. Tucker has been

substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. David Wayne Kelso* in the Circuit Court for Bay County, Florida, Case No. 99-1563 be DENIED, and that the clerk be directed to close the file.

2.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 6th day of July, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).s